MARY JENNEMAN and TOM JENNEMAN, Dependents of S. P. JENNE-MAN, Employee, v. CONSOLIDATED UNDERWRITERS, Insurer, Appellant.

MARY JENNEMAN and TOM JENNEMAN, Dependents of S. P. JENNE-MAN, Employee, v. SCULLIN STEEL COMPANY, Employer, Appellant.—100 S. W. (2d) 458.

Division One, January 5, 1937.

*Fordyce, White, Mayne & Williams* and *G. Carroll Stribling* for appellants.

*R. J. Schroeder* for respondents.

GANTT, P. J.—Respondents (dependents) filed a claim with the Workmen's Compensation Commission to recover for the death of Sylvester Jenneman. The commission made an award denying compensation on the theory that his death was not the result of an accident arising out of and in the course of his employment. On the circuit court reversing the award and remanding the claim, defendants (employer and insurer) appealed. Under the Compensation Act the amount in dispute is in excess of $7500.

I. Respondents contend that the record presents nothing for review for the reason appellants did not file a motion for a new trial in the circuit court. The circuit court only reviewed the record of the proceedings before the commission. Absent a trial in said court, a motion for a new trial was unnecessary. [State ex rel. Department Stores v. Haid, 327 Mo. 567, 1. c. 581, 38 S. W. (2d) 44; Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S. W. (2d) 551, 556, 558.] It should be stated that respondents filed an affidavit in the circuit court purporting to present an issue of fraud within the meaning of the Compensation Act. On the court sustaining appellant's motion to strike same from the files, respondents made an offer of proof with reference to the matter. Appellants' objection to the offer was sustained and respondents excepted. Of course, appellants were not required to file a motion for a new trial on the ruling on the affidavit. The ruling was in their favor. The contention is overruled. (Cases cited, supra.)

II. Appellants contend that the award of the commission denying compensation was supported by substantial evidence and should not have been disturbed. The facts follow:

In February, 1929, deceased received a hernia while in the service of the Scullin Steel Company. After a successful operation he returned to work wearing a truss, which he soon discarded. On May 6, 1930, while in the course of his employment, there was a recurrence of the hernia. He continued to work until December 1, 1930, when he was again operated on by Dr. Will, the company's physician. In the hospital he contracted a cold, pleurisy in the right side, phlebitis in the left leg, headaches and a temperature. On two occasions as he walked about the room in the hospital his right side became numb, right leg weakened, and he fell. On these occasions he continued in a weakened condition for forty-five minutes. On January 24, 1931, he returned home, reported to Dr. Will, and, on the doctor's suggestion, went through the Barnes Hospital Clinic. On April 15, 1931, he returned to work and continued in the service for fifteen days. In the meantime he lost interest in his personal appearance and family, constantly suffered pain on the left side of his head, could not use his right hand, and in walking dragged his right foot. On May

15, 1931, he entered the Veterans Hospital in St. Louis. At this time he spoke with difficulty, could not write and continued to suffer pain in his head. Finally he was removed to the Veterans Hospital in Chicago. He grew worse and died in said hospital May 14, 1932. On May 19, 1932, an autopsy was performed by Dr. D. L. Harris in the presence of Dr. Francis M. Barnes, Jr., who attended at the request of the attorney for respondents.

The question presented to the commission was purely medical. It is unnecessary to set forth the testimony of the physicians. All agreed that the cause of death was softening of the brain, which condition existed for two weeks before death; that it was caused by a thrombosis in the branch of the middle cerebral artery; that the thrombosis was caused by arteriosclerosis, and the hernia did not directly cause death. The physicians called by respondents testified that the last operation for hernia caused the cold, pleurisy and phlebitis; that the pleurisy or phlebitis, or both, either caused or aggravated the condition of arteriosclerosis, which in turn caused the thrombosis. On the contrary the physicians called by appellants testified that neither the hernia, cold, pleurisy nor phlebitis in any manner caused or aggravated said condition. They also testified that the pain, dizziness and suffering experienced by deceased after the last operation were due to cerebral angiospasms.

Respondents challenge the testimony of Dr. Harris for the reason that he submitted two reports of the autopsy. The first report disclosed no arteriosclerosis in the region of the cerebral artery. In explanation, he testified that after submitting the first report he continued the examination with the aid of a microscope, which disclosed arteriosclerosis. He submitted specimens to other physicians, who made microscopic examinations, and all agreed that the microscope disclosed arteriosclerosis in said region. Furthermore, his submission of two reports on the autopsy was for the consideration of the commission in weighing his testimony. In this connection it may be stated that the autopsy showed a cancerous colon and a diseased kidney.

Thus it appears that the ruling of the commission was supported by substantial evidence. [Decker v. Raymond Concrete Pile Co., 336 Mo. 1116, 82 S. W. (2d) 267.] It follows that the courts are without authority to disturb the award. The judgment of the circuit court is reversed and the cause remanded with directions to affirm the award of the commission.

All concur.